# Exhibit A

## (Revised Proposed Order – Clean)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Renovo Home Partners, LLC, *et al.*,[1] | ) | Case No. 25-11937 (TMH) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Related D.I. 61** |
| | ) | |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, 503, 507(b), AND 552, FED. R. BANKR. P. 2002, 4001(b), 6004(h), AND 9014 AND DEL. BANKR. L.R. 4001-2 (I) AUTHORIZING THE TRUSTEE TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) SCHEDULING A FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(b) AND (IV) GRANTING RELATED RELIEF**

Upon the emergency motion (the "Motion"),[2] of Ricardo Palacio, the interim Chapter 7 trustee (the "Trustee") of the estates of the above-captioned debtors (collectively, the "Debtors") in the above-captioned cases (the "Cases") commenced on November 3, 2025 (the "Petition Date") for interim and final orders under sections 105, 361, 362, 363, 503, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001(b), 6004(h), and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (as amended, the "Local Rules") seeking:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Renovo Home Partners, LLC (1823); HomeRenew Intermediate Holdings, Inc. (6614); HomeRenew Buyer, Inc. (9541); Dreamstyle Remodeling, LLC (2744); Dreamstyle Remodeling of California, LLC (2383); Legacy Custom Building & Remodeling (0376); Dreamstyle Remodeling of Idaho, LLC (4854); Dreamstyle Remodeling of Colorado, LLC (1233); Remodel USA, LLC (9255); Alure Designs, LLC (3142); Alure Home Improvements, LLC (6347); Reborn Cabinets, LLC (5709); Woodbridge Home Solutions of Kansas, LLC (8877); Newpro Operating, LLC (5129); Minnesota Rusco, LLC (7330); Woodbridge Home Solutions, LLC (0470); Newpro Plumbing LLC (7630); Reborn Manufacturing, LLC (4161); Woodbridge Shower and Bath LLC (2087). The Debtors' mailing address was 4519 Sigma Road, Suite 100, Dallas, TX 75244.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

(I)　　as set forth herein, authorization for the Trustee to (a) use the Cash Collateral (as defined below) pursuant to section 363 of the Bankruptcy Code on the terms and conditions set forth in this order (this "Interim Order") and (b) provide adequate protection to the Prepetition Secured Parties (as defined below) under the Existing Agreements (as defined below);

(II)　　to schedule, pursuant to Bankruptcy Rule 4001(b), an interim hearing (the "Interim Hearing") on the Motion to be held before the Court to consider entry of this Interim Order;

(III)　　to schedule, pursuant to Bankruptcy Rule 4001(b), a final hearing (the "Final Hearing") for the Court to consider entry of a final order (the "Final Order") approving the relief granted herein on a final basis; and

(IV)　　waiver of the fourteen-day stay provisions of Bankruptcy Rule 6004(h).

The Interim Hearing having been held by this Court on January 13, 2026 at 2:30 p.m., and upon the record made by the Trustee at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.　　*Jurisdiction*.　This Court has core jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.　　*Notice*.　Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Trustee on the following parties (or their counsel): (i) the Existing Agent, (ii) the Lenders (as defined below) under the Existing Credit Agreement, (iii) the United States Trustee for the District of Delaware, (iv) any entity known to the Trustee to claim an interest in Cash

Collateral; and (v) all other parties having requested notice pursuant to Bankruptcy Rules 2002. The Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rules 2002 and 4001(b) and Local Rule 4001-2(c) in all respects, and no other or further notice is necessary.

3.      *Approval of Motion*.   The interim relief requested in the Motion is granted as described herein.  Except as otherwise expressly provided in this Interim Order, any objection to the entry of this Interim Order that has not been withdrawn, waived, resolved, or settled, is hereby denied and overruled on the merits.

4.      *Prepetition Indebtedness*.    Subject in all respects to the Trustee's ongoing investigation and without waiver of any rights, claims, arguments or defenses of the Trustee or the Debtors' estates, other than may be expressly set forth herein:

(a)      Prior to the Petition Date, one or more of the Debtors entered into that certain Amended and Restated Credit Agreement, dated as of April 14, 2025 (the "Existing Credit Agreement") by and among HomeRenew Buyer, Inc., HomeRenew Intermediate Holdings, Inc., the other persons party thereto designated as Credit Parties (as defined in the Existing Credit Agreement), Alter Domus (US) LLC, as agent (the "Existing Agent"), MidCap Financial Trust, as joint lead arranger, and the lenders from time to time parties thereto (the "Lenders"), as lenders.

(b)      The Prepetition Secured Parties assert that the Debtors' indebtedness under the Existing Credit Agreement as of the Petition Date (the "Prepetition Indebtedness") includes any and all principal amounts owing or outstanding under the Existing Credit Agreement, interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable fees and expenses of attorneys, accountants, and financial advisors to the extent chargeable or reimbursable pursuant to the Existing Credit Agreement or

related agreements), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit or other obligations outstanding thereunder.

(c)     Pursuant to the Existing Credit Agreement, the Prepetition Secured Parties assert that the Debtors were, as of the Petition Date, indebted to the Prepetition Secured Parties in the aggregate principal amount of not less than $129,574,575.12 (plus accrued but uncapitalized interest, fees, and any other amounts due under the Existing Credit Agreement).  The Trustee reserves all rights to object to and regarding the foregoing indebtedness, including the amounts and allowance thereof.

(d)     The Prepetition Secured Parties assert that to secure the Prepetition Indebtedness under the Existing Credit Agreement, the Debtors entered into certain of the Collateral Documents (as defined and set forth in the Existing Credit Agreement, and together with the Existing Credit Agreement, the "Existing Agreements").  The Trustee reserves all rights to object to and regarding  the Existing Agreements, including the validity thereof.

(e)     Pursuant to the Collateral Documents, the Prepetition Secured Parties assert that the Debtors party thereto granted security interests in, and continuing "Liens", as that term is defined in the Existing Agreements ("Liens"), on, certain assets of the Debtors (the "Collateral") to and/or for the benefit of the applicable Existing Agent or other applicable secured parties (the "Prepetition Secured Parties" and each, a "Prepetition Secured Party") under the Collateral Documents (such liens, the "Prepetition Liens").  The Prepetition Secured Parties assert that the Collateral includes cash collateral as defined in 11 U.S.C. § 363(a) (the "Cash Collateral") and the assets of the Debtors in or upon which the Prepetition Secured Parties assert that liens or other security interests have been granted in favor or for the benefit of the Prepetition Secured Parties in connection with, pursuant to, or under the applicable Existing Agreements that existed as of the

Petition Date and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits. For the avoidance of doubt with regard to certain of the Debtors' deposit accounts, the Trustee asserts that the Prepetition Secured Parties do not hold properly perfected security interests in such accounts and/or the funds therein, and the Trustee reserves all rights to object to the security interests and Liens asserted by the Prepetition Secured Parties in the Collateral including the extent, validity and priority thereof. The Prepetition Secured Parties dispute any assertion that the Prepetition Secured Parties do not hold valid, properly perfected security interests in the cash in the Debtors' deposit accounts.

     5.    *Findings Regarding the Use of Cash Collateral and the Collateral.*

     (a)    Good cause has been shown for the entry of this Interim Order.

     (b)    The Trustee has an immediate and critical need to use Cash Collateral, in order to, among other things, prepare the Debtors' required schedules and statements of financial affairs, otherwise administer these Cases, and permit the orderly liquidation of the Debtors' estates.

     (c)    The terms of the use of the Cash Collateral pursuant to this Interim Order are fair and reasonable, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and constitute reasonably equivalent value and fair consideration.

     (d)    This Interim Order and the terms of the use of the Cash Collateral have been negotiated extensively, in good faith, and at arm's length by and among the Trustee, the Existing Agent and certain of the Prepetition Secured Parties.

     (e)    The Trustee has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). Unless the interim relief set forth in this Interim Order is granted immediately, the Trustee will not be able to administer the Debtors' estates, which will be immediately and irreparably harmed as a result. In particular, the Trustee requires immediate use

of the Cash Collateral to, among other things, permit the preparation required schedules and statements of financial affairs, otherwise administer these Cases, and permit the orderly liquidation of the Debtors' estates.  The use of the Cash Collateral, in accordance with this Interim Order, is therefore in the best interest of the Debtors' estates.

6.    *Authorization to Use Cash Collateral.*

(a)    Subject to the terms, conditions, and limitations set forth in this Interim Order, including the Budget (as defined below), the Trustee is hereby authorized to use the Cash Collateral until the Termination Date solely for the items set forth in the Budget.  For the avoidance of doubt, under this Interim Order no Cash Collateral is authorized to be used to pay any professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Prepetition Secured Parties, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, employees, attorneys, or advisors, in any capacity.

(b)    Attached as Exhibit A hereto and incorporated by reference herein is an interim budget setting forth the amount of Cash Collateral to be used for the period beginning on the Petition Date and continuing through January 31, 2026 (the "Budget").  The Existing Agent, as directed by the Required Lenders (as defined below) and on behalf of the Prepetition Secured Parties, has approved the Budget.  Cash Collateral used pursuant to this Interim Order shall be used in accordance with the Budget, subject to any Permitted Variance (as defined below) in any individual category in the Budget and the Total Budget Cap (as defined below).  As used herein, "Required Lenders" means, as of any date of determination, lenders constituting "Required Lenders" pursuant to, and as defined in, Existing Credit Agreement.  The Prepetition Secured Parties shall have no obligation with respect to the Trustee's use of the Cash Collateral, and shall

not be obligated to ensure or monitor the Trustee's compliance with the Budget or to pay (directly or indirectly from the Cash Collateral) any expenses incurred or authorized to be incurred pursuant to the Budget.   The Prepetition Secured Parties' consent to the Budget shall not be construed as consent to the use of any Cash Collateral after the Termination Date, regardless of whether the aggregate funds shown on the Budget have been expended.  In the event any of the Termination Events (as defined below) shall occur and be continuing, the Trustee's right to use Cash Collateral shall terminate in accordance with paragraph 9 below; provided, however, notwithstanding anything contained in this paragraph 6(b) to the contrary, the Trustee shall be permitted to nevertheless seek Court approval to use the Cash Collateral.

7.     *Permitted Variance*.  The Trustee is authorized to use Cash Collateral solely in an aggregate amount not to exceed the total amount set forth in the Budget then in effect (the "Total Budget Cap"). Subject to the Total Budget Cap, the Trustee may reallocate expenditures among individual Budget categories such that actual expenditures for any category may exceed the budgeted amount for such category by up to fifteen percent (15%) (a  "Permitted Variance"); provided that any such overage is contemporaneously offset by a corresponding reduction in one or more other Budget categories, in each case in the Trustee's discretion, so that total expenditures do not exceed the Total Budget Cap.  For the avoidance of doubt, the Permitted Variance provides category-level flexibility only, does not increase the Total Budget Cap, and does not authorize the use of Cash Collateral in excess of the Total Budget Cap.

8.     *Carve-Out.*  The Existing Agent (at the direction of the Required Lenders) on behalf of the Prepetition Secured Parties, agrees to subordinate the liens and claims asserted by the Prepetition Secured Parties (the "Carve-Out") to the following extent: (a) any administrative fees or expenses incurred by the Trustee or the Debtors' estates (other than professional fees and

expenses discussed in clause "(c)" below) prior to the issuance of a Carve-out Notice, that are included in the Budget and regardless of whether such fees and expenses are subject to allowance by order of the Court,  (b) allowed and unpaid commissions and expenses permitted under section 326(a) of the Bankruptcy Code; and (c) allowed, accrued and unpaid fees and out-of-pocket expenses (regardless of when such fees and expenses become allowed by order of the Court) of the Trustee's professionals retained by order of the Court (or whose application for retention is then pending, provided such application is ultimately approved), incurred on or prior to the occurrence of a Carve-Out Event (as defined below) and in aggregate accrued amounts for such professionals not in excess of the amounts set forth in the Budget through the date of such Carve-Out Event.  For the purposes hereof, a "Carve-Out Event" shall occur upon the occurrence and during the continuance of a Termination Event and upon delivery of a written notice thereof to the Trustee (a "Carve-Out Notice").  So long as no Carve-Out Event shall have occurred and be continuing, the Carve-Out shall continue and the Trustee shall be authorized to pay pursuant to the Carve-Out fees, expenses, and disbursements of professionals retained by the Trustee by order of this Court allowed by this Court and payable under sections 328, 330, and 331 of the Bankruptcy Code, which allowed fees, expenses and disbursements shall only be paid in accordance with and subject to a Budget approved by the Required Lenders.  Upon the delivery of a Carve-Out Notice, the right of the Trustee to pay professional fees incurred after the date of issuance of the Carve-Out Notice shall terminate and upon receipt of such notice, and the Trustee shall provide immediate notice by email to all retained professionals informing them that a Carve-Out Event has occurred. The Carve-Out shall not be available to pay any professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Prepetition Secured Parties, or their respective agents,

affiliates, subsidiaries, directors, officers, representatives, attorneys, employees, or advisors, in any capacity. Nothing in this Interim Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates. A waiver of a Termination Event triggering a Carve-Out Event shall constitute the cancellation of such Carve-Out Event allowing the Trustee to pay in accordance with and subject to the Carve-Out compensation and reimbursement of expenses authorized to be paid under Bankruptcy Code sections 330 and 331 or otherwise pursuant to an order of the Court, as the same may be due and payable.

9.    *Termination of Use of Cash Collateral.* Subject to paragraphs 8, 10, and 11, the Prepetition Secured Parties' consent to the Trustee's right to use the Cash Collateral pursuant to this Interim Order shall automatically terminate (the date of any such termination, the "Termination Date") without further notice or court proceedings on the earliest to occur of any of the events set forth in clauses (a) through (l) below (such events collectively referred to herein as the "Termination Events").

(a)    February 12, 2026 (unless extended with the prior written consent of the Required Lenders, which extension thereof shall be effective without further application to or approval by the Court);

(b)    three Business Days (as defined in the Existing Credit Agreement) after notice from the Existing Agent or the Required Lenders of the failure of the Trustee to comply with a material provision of this Interim Order, including, without limitation, the requirement that use of Cash Collateral be in accordance with the Budget, subject to any Permitted Variance in any individual category in the Budget and the Total Budget Cap;

(c)        (i) any of the Cases shall be dismissed or an examiner with expanded powers shall be appointed in any of the Cases, or (ii) the Trustee shall seek entry of an order accomplishing any of the foregoing;

(d)        other than pursuant to an order reasonably satisfactory to the Required Lenders, the entry of an order granting relief from the automatic stay so as to allow a third party (other than JPM (as defined below) in respect of any JPM Claim (as defined below)) to proceed against any Collateral that has a value in excess of $500,000 in the aggregate;

(e)        except as authorized by an order of this Court and with the prior written consent of the Required Lenders, the payment of any prepetition claim (other than an allowed claim that is a JPM Claim to the extent of a valid right of setoff pursuant to section 553 of the Bankruptcy Code) other than a payment or series of payments of prepetition claims in an aggregate amount no greater than $250,000;

(f)        the Trustee shall create, incur, or suffer to exist any postpetition liens or security interests on any Collateral other than: (i) those granted pursuant to this Interim Order; (ii) the filing of a preliminary lien notice or similar notice by a carrier, mechanic, warehouseman, repairman, or similar party in advance of such party providing services to the Trustee, solely to the extent required for the liquidation of the Debtors' estates, and provided further that any act to enforce such liens or preliminary lien notices shall be subject to the applicable provisions of this Interim Order, including, without limitation, paragraph 9(d) hereof; and (iii) any other junior liens or security interests of the type and in the amounts that the Debtors are permitted to incur under the Existing Agreements;

(g)     except for the Final Order, an order shall be entered granting another claim or lien *pari passu* with or senior to the Adequate Protection Liens (as defined below) or 507(b) Claims (as defined below) granted to the Prepetition Secured Parties under this Interim Order;

(h)     an order of the Court shall be entered reversing, staying for a period in excess of five Business Days, vacating or otherwise amending, supplementing, or modifying this Interim Order without the written consent of the Required Lenders;

(i)     one or more judgments or decrees (other than the allowance of claims pursuant to section 503(b)(9) of the Bankruptcy Code) required to be satisfied as an administrative expense claim shall be entered after the Petition Date against the Debtors or their estates involving in the aggregate a liability (not paid or to the extent not covered by a reputable and solvent insurance company) and such judgments and decrees either shall be final and non-appealable or shall not be vacated, discharged, or stayed or bonded pending appeal for any period of 30 days from entry thereof, and the aggregate amount of all such judgments equals or exceeds $500,000;

(j)     any proceeding shall be commenced by the Trustee or any Debtor seeking, or otherwise consenting to, (x) the invalidation, subordination, or other challenging of the 507(b) Claims or the Adequate Protection Liens or (y) subject to entry of a Final Order, any relief under section 506(c) of the Bankruptcy Code with respect to any Collateral, including the Cash Collateral, or (ii) the Trustee or any Debtor shall file a motion, pleading, or proceeding which could reasonably be expected to result in a material impairment of the rights or interests of the Prepetition Secured Parties, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, employees, or advisors, in any capacity, or there is a determination by a court with respect to a motion, pleading or proceeding brought by another party which results in such a material impairment;

(k)      (i) any material provision of this Interim Order shall cease to be valid and binding for any reason or (ii) the Trustee shall seek any modification of this Interim Order that is materially adverse to the Prepetition Secured Parties without the prior written consent of the Existing Agent and/or the Required Lenders; or

(l)      the expiration of the Budget with no agreement for an amended or extended Budget approved by the Existing Agent or the Required Lenders.

10.    *Remedies After a Termination Date*.  Subject to the provisions of this paragraph and paragraphs 4(e), 8 and 11, the Trustee's authority to use Cash Collateral pursuant to this Interim Order shall automatically terminate upon the occurrence of a Termination Event unless such Termination Event is waived in writing by the Required Lenders, all without further order or relief from the Court.  Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Trustee or other party in interest to use Cash Collateral or to obtain any other injunctive relief.

11.    *Application of Collateral Proceeds*.  Subject to entry of an order of this Court to the contrary and paragraph 8 hereof, immediately following the occurrence of a Termination Event, the Trustee is hereby authorized to remit all collections, remittances, and proceeds, as described above, to the Existing Agent, for the benefit of the Prepetition Secured Parties, subject to the Trustee's ongoing investigation and rights to object to the validity of the Prepetition Secured Parties' claims and liens, which are reserved.

12.    *Charging Expenses Against Collateral*.  No action, inaction, or acquiescence by the Prepetition Secured Parties, including permitting the use of Cash Collateral, shall be construed as consent to a charge against the Collateral pursuant to sections 105(a) or 506(c) of the Bankruptcy

Code.  However, and for the avoidance of doubt, the Trustee reserves, for the benefit of the estates, all rights and remedies under such sections.

13.    *Limitations under Section 552(b) of the Bankruptcy Code*.  The Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552 of the Bankruptcy Code, subject to and effective upon entry of a Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to (i) proceeds, products, offspring, or profits of any of the Collateral, including the Cash Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Collateral.

14.    *Payments Free and Clear*.  Subject to paragraphs 4(e), 8 and 11, and also subject to all reservations of the Trustee set forth in this Interim Order, any and all payments or proceeds remitted to the Prepetition Secured Parties pursuant to the Existing Agreements or pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment, or other liability.

15.    *Adequate Protection for the Existing Agent and the Prepetition Secured Parties*.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their interests, if any, in the Cash Collateral, in an amount equal to the diminution in value of their respective interests in the Cash Collateral solely on account of the Trustee's use of Cash Collateral, or (ii) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  As adequate protection, the Prepetition Secured Parties are hereby granted, to the extent of the aggregate diminution in the value of their interests in the Cash Collateral, the following (collectively, the "Adequate Protection Obligations"), provided, that, notwithstanding anything to the contrary in this Interim Order, the Adequate Protection Obligations (including, without limitation, the Adequate Protection Liens and the

507(b) Claims, each as defined below) shall be incurred and deemed allowed only to the extent, and in the same measure, that any of the asserted Prepetition Liens of the Prepetition Secured Parties in the Cash Collateral are determined to be valid, enforceable, perfected, and unavoidable under applicable law, and all rights, claims, and defenses of the Trustee to investigate, object to, challenge, avoid, subordinate, or otherwise contest any such asserted Prepetition Liens, the Prepetition Indebtedness, and the Adequate Protection Obligations are expressly preserved and not waived by this Interim Order:

(a)     Adequate Protection Liens.  Valid, enforceable, non-avoidable, perfected security interests in and Liens on (the "Adequate Protection Liens") all property of any kind or nature whatsoever, whether now owned or hereafter acquired or existing and wherever located, of each Debtor's estate (as created pursuant to section 541(a) of the Bankruptcy Code), whether real or personal, tangible or intangible, including all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, intellectual property including, without limitation, patents, trademarks, copyrights and licenses, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax, or other refunds, insurance proceeds, letters of credit, owned real estate, fixtures, vehicles, deposit accounts, commercial tort claims, securities accounts, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, securities including, without limitation, all of the issued and outstanding capital stock of each subsidiary of each Debtor and other equity or ownership interests, including equity interests in non-wholly owned subsidiaries, money, and causes of action (other than causes of action and the proceeds thereof, if any, (i) under Chapter 5 of the Bankruptcy Code or (ii) against any of the Prepetition Secured Parties in their respective capacities as lender, equity holder or any other capacity whatsoever), Cash Collateral, and all cash and non-cash proceeds, rents, products,

substitutions, accessions, and profits of any of the collateral described above (all such property, the "Adequate Protection Collateral"), which Liens and security interests shall be senior to any and all other Liens and security interests, subject only to (i) the Carve-Out and (ii) any Liens permitted under the Existing Agreements.  For the avoidance of doubt, the Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Petition Date and without the necessity of the execution by the Debtors or the Trustee, or the filing of, as applicable, any mortgages, security agreements, pledge agreements, financing statements, state or federal notice, recordings, or other agreements and without the necessity of taking possession or control of any Adequate Protection Collateral.  Any Adequate Protection Liens granted hereby shall be valid, enforceable, and perfected only to the extent that the Prepetition Liens of the Prepetition Secured Parties are valid, enforceable, perfected, and unavoidable, and solely in such corresponding extent and priority. Except as provided herein, under no circumstances shall the Adequate Protection Liens be made subordinate to the lien of any other party, no matter when arising.

> (b)     Section 507(b) Claims.  Allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, as provided in section 507(b) of the Bankruptcy Code (the "507(b) Claims"), which claims shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including sections 105, 326, 327, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 552 (subject to entry of a Final Order), 726, or 1114 of the Bankruptcy Code, whether or not such expenses or claims arise in the Cases or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom, subject and subordinate only to the Carve-Out.  The 507(b) Claims shall be an allowed claim

jointly and severally against each Debtor; provided that any 507(b) Claims granted hereby shall be allowed and have priority only to the extent, and in the same measure, that the Prepetition Secured Parties hold valid, enforceable, perfected, and unavoidable interests in the Cash Collateral and have actually suffered a diminution in the value of such interests, which are all subject in all respects to the Trustee's rights, claims, and defenses, which are fully preserved. Other than the Carve-Out, no cost or expense of administration of the Cases shall be senior to, or *pari passu* with, the 507(b) Claims.

(c)     <u>Reporting Obligations</u>. Subject to there existing sufficient available funds in the Budget to satisfy related fees and expenses, the Trustee is authorized to promptly provide to the Existing Agent, the Lenders, Agent Counsel (as defined below), Lender Counsel (as defined below), and to such other advisors as directed, such information and due diligence materials as the Existing Agent and/or the Required Lenders reasonably request, and shall meet with (or cause counsel to the Trustee, contracted employees and/or advisors to meet with the Required Lenders and/or their advisors at reasonable times upon request of the Existing Agent and/or Required Lenders.

16.     *Reservation of Rights of the Prepetition Secured Parties*. The Prepetition Secured Parties consent to the adequate protection provided herein. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant hereto is without prejudice to, and does not constitute a waiver of, expressly or implicitly, (a) the right of the Prepetition Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection (subject to the rights of the Trustee to object thereto), (b) the Prepetition Secured Parties' rights under the Existing Agreements, or (c) any of the rights of the Prepetition Secured Parties under the Bankruptcy Code

or applicable nonbankruptcy law.  Except as provided herein, nothing contained in this Interim Order (including the authorization to use the Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to the Prepetition Secured Parties.

17.     *Perfection of Adequate Protection Liens.*

(a)     The Existing Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction to validate and perfect the Adequate Protection Liens granted to it hereunder, and the Existing Agent is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so.  Whether or not the Existing Agent shall, in its respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments to confirm perfection of the Adequate Protection Liens, such Adequate Protection Liens shall, subject to paragraph 15 of this Interim Order, be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination as of the date of entry of this Interim Order.  A certified copy of this Interim Order may, in the discretion of the Existing Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

(b)     Subject to there existing sufficient available funds in the Budget to satisfy related fees and expenses, the Trustee shall execute and deliver to the Existing Agent all such agreements, financing statements, instruments, and other documents as the Existing Agent may reasonably request to evidence, confirm, validate, or perfect the Adequate Protection Liens.

18.     *Preservation of Rights Granted Under the Order.*

(a)     Except for the claims to be incurred and liens to be granted in connection with the Motion and subject to the Carve-Out, no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the Prepetition Secured Parties shall be granted while any portion of the Prepetition Indebtedness and the Adequate Protection Obligations remain outstanding, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code (other than any lien or security interest of the Prepetition Secured Parties avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code).

(b)     Except as expressly provided in this Interim Order or in the Existing Agreements, the Adequate Protection Liens, the 507(b) Claims, and all other rights and remedies of the Prepetition Secured Parties granted by this Interim Order and the Existing Agreements shall survive, and shall not be modified, impaired, or discharged by the entry of an order dismissing any of the Cases.  In any successor proceeding related to these Cases, if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, the Adequate Protection Liens, the Adequate Protection Obligations, and all other rights and remedies of the Prepetition Secured Parties granted by this Interim Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

19.     *Limitation on Use of Cash Collateral and Collateral*.  The Trustee shall use the Cash Collateral solely as provided in this Interim Order.  Notwithstanding anything herein or in any other order of this Court, none of the Collateral, including the Cash Collateral, may be used to (a) object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of any amount due under the Existing Agreements or the Liens or claims granted under this Interim

Order or the Existing Agreements, (b) assert any claims and defenses or any other causes of action against the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, employees, attorneys, or advisors, in any capacity, (c) prevent, hinder, or otherwise delay the Prepetition Secured Parties' assertion, enforcement, or realization on the Collateral in accordance with the Existing Agreements or this Interim Order, (d) seek to modify any of the rights granted to the Prepetition Secured Parties hereunder or under the Existing Agreements, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent, or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under a Budget approved by the Existing Agent or Required Lenders, provided, however, that nothing in this paragraph 19 or this Interim Order shall constitute a determination by the Court or an admission by any party in interest as to whether any cash held in any of the Debtors' estates is "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code.

20.     *Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order, on the one hand, and the Motion or the Existing Agreements, on the other, the provisions of this Interim Order shall govern.

21.     *Binding Effect; Successors and Assigns*.  The provisions of this Interim Order, including all findings herein, shall be binding upon and inure to the benefit of all parties-in-interest in the Cases, including the Trustee, the Prepetition Secured Parties, to the extent as set forth herein, and the Debtors and their respective successors and assigns (including any trustee hereinafter appointed or elected for any of the Debtors, an examiner with expanded powers appointed pursuant to the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors); provided that, except

to the extent expressly set forth in this Interim Order, the Prepetition Secured Parties shall have no obligation to permit the use of the Cash Collateral or extend any financing to any other chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

22.    *JPMorgan Chase Bank, N.A.*    Notwithstanding anything to the contrary in this Interim Order, nothing in this Interim Order (i) authorizes or directs any action with respect to JPMorgan Chase Bank, N.A. ("JPM"), any of the Debtors' accounts held at JPM (the "JPM Accounts") and/or any of the Debtors' funds held in the JPM Accounts (the "JPM Cash Collateral"), (ii) authorizes the Debtors to use, or grants any party any rights with respect to, the JPM Accounts and/or the JPM Cash Collateral, (iii) shall affect, impair, prime, subordinate and/or prejudice the rights, claims, security interests, liens, arguments and/or defenses, if any, held or assertable by (a) JPMincluding, without limitation, JPM's rights, claims, security interests, liens, arguments and/or defenses under section 553 of the Bankruptcy Code concerning the JPM Accounts and/or the JPM Cash Collateral (collectively, "JPM's Claims") or (b) the Trustee, the Debtors' estates or any other party-in-interest with respect to JPM's Claims.    Furthermore, all of the Trustee's, the Debtors' estates and any other party-in-interest's rights, claims, arguments and defenses concerning JPM are fully reserved.

23.    *Limitation of Liability.*    Subject to and effective upon entry of a Final Order, in permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to such Final Order or the Existing Agreements, the Prepetition Secured Parties shall not solely by reason thereof be deemed to be in control of the Debtors or their liquidation or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et*

*seq.* as amended, or any similar federal or state statute). Furthermore, subject to and effective upon entry of the Final Order, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from the postpetition activities of the Trustee or any of the Debtors.

24.    *Effectiveness.* This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Interim Order. The fourteen (14) day stay provisions of Bankruptcy Rule 6004(h), to the extent applicable, are waived and shall not apply to this Interim Order.

25.    *Final Hearing.* The Final Hearing is scheduled for _____, 2026 at _____ __.m. (prevailing Eastern Time), before this Court.

26.    *Final Hearing Notice.* The Trustee shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court. Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon: (i) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, DE 19801; (ii) Ashby & Geddes LLP, 500 Delaware Avenue, P.O. Box 1150, Wilmington, Delaware 19899 (Attn: Gregory A. Taylor, Esq.), co-counsel for the Trustee; (iii) Cozen O'Connor, 1201 North Market Street, Suite 1001, Wilmington, DE 19801 (Attn: John T. Carroll, III, Esq.), co-counsel for the Trustee; (iv) O'Melveny & Myers LLP, 400 South Hope Street, 19th Floor, Los Angeles, CA 90071 (Attn: Julian Gurule, Esq. and Jordan A. Weber, Esq.), counsel for certain lenders ("Lender Counsel"); and (v) Holland & Knight LLP, Nashville City Center, 511 Union Street, Suite 2700, Nashville, TN 37219 (Attn: Tyler Layne, Esq.), counsel for

the Existing Agent ("<u>Agent Counsel</u>"); and shall be filed with the Clerk of the Court, in each case

so as to be received by 4:00 p.m. (prevailing Eastern Time) no later than seven days prior to the

Final Hearing.

**<u>EXHIBIT A</u>**
**(Budget)**

Budget shall include:

1. $300,000 allocated for the fees and costs incurred concerning Consultants (former employees retained by the Trustee pursuant to Order [Docket No. 36];

2. $100,000 allocated for the fees and costs incurred by Stretto concerning the preparation of the Debtors' Schedules and Statements;

3. $400,000 allocated for the fees and costs of Hill Archive, or other similar vendors in the reasonable discretion of the Trustee, incurred concerning the Trustee's efforts to retrieve the Debtors' business records;

4. $50,000 allocated for the fees and costs anticipated to be incurred in connection with the preparation and delivery of 2025 year-end W2, 1099 or similar forms to the Debtors' former employees;

5. $150,000 allocated for the postpetition fees and costs of third-party providers such as SHI necessary to preserve the Debtors' information technology systems and access to the Debtors' electronic business records; and

6. $200,000 allocated for (i) the fees and expenses incurred by the Trustee's retained professionals and (ii) the Trustee's commissions payable pursuant to section 326 of the Bankruptcy Code.